## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

PETER KIRKLAND, and          )
KATIE L. W. KIRKLAND

                             )

    PLAINTIFF,

                             )

VS.                                         2:08-cv-1770-JHH

                             )

BLUE CROSS AND BLUE SHIELD
OF ALABAMA,                      )

    DEFENDANT.                 )

## MEMORANDUM OPINION

## I.    INTRODUCTION

The court has before it Plaintiffs' Motion for Partial Summary Judgment as to Count I (Doc. #15) and Defendant's Motion for Summary Judgment (Doc. #41).

The original Motion (Doc. #15) for Partial Summary Judgment, filed on February 3, 2009, set off a firestorm in this case. Defendant, Blue Cross and Blue Shield of Alabama (hereinafter "BCBS") moved the court for additional time to complete discovery in order to submit a full and complete response to the motion for partial summary judgment. (*See* Doc. #19). That motion (Doc. #19) was granted, but not without opposition from Plaintiffs. (*See* Docs. #21, 22, 24). After another extension of time to allow the parties to complete discovery, (*see* Doc. #26), the final

deadline for discovery was set for September 8, 2009, and the parties were allowed until the same date to file additional or supplemental dispositive motions.

During the course of discovery, the court heard from the parties on several occasions. Four motions to compel (docs. #27, 28, 29, 30) were filed by Plaintiffs on June 23, 2009, and on July 15, 2009, Plaintiffs filed a motion to quash (doc. #34) a subpoena. Defendant got into the swing of things by filing a motion to preclude (doc. #36) on August 4, 2009. Although all of those motions have heretofore been ruled upon, (*see* docs. #35, 37, 40), the court outlines the contentious history of this case to emphasize its appreciation that the dispositive motions are, at last, under submission.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party

2

has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could [find] for the nonmoving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not

3

controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand

4

a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.  STATEMENT OF FACTS[1]

At all times relevant to this case, Peter Kirkland maintained health insurance as a dependent of his wife Katie Kirkland through an employee welfare benefit plan established and maintained by Mrs. Kirkland's employer, National Metals, Inc. ("National Metals").[2]  (*See* Doc. #42 at 1, ¶ 1; *see also* Doc. #48 at 6, ¶ 1).  The plan is an insured plan regulated exclusively by the Employee Retirement Income Security Act of 1974 ("ERISA").  BCBS was, at all times relevant to this case, the insurer of

---

[1] These are the facts for summary judgment purposes only; they may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.'") (internal citation omitted).

[2] National Metals is Mrs. Kirkland's family business.  (*See* Doc. #16 at 1; *see also* Doc. #42 at 17).  In November of 2005, Mr. Kirkland obtained additional health insurance coverage through his membership in the Bricklayer's and Allied Craftworkers International Health Fund which was insured by United Healthcare.  (*See* Doc. #42 at 2-3, ¶ 3).  The United Healthcare Plan covered Mr. Kirkland as a primary insured member and not as a dependent.  (*See* Doc. #42 at 3, ¶ 3).  Subsequent to November 2005, Peter Kirkland continued to file claims under BCBS, without notifying BCBS of his coverage through United Healthcare.  (*See* Doc. #42 at 3, ¶ 4).

the National Metals Plan. (*See* Doc. #42 at 1-2, ¶ 1; *see also* Doc. #48 at 6, ¶ 1). The National Metals health insurance plan was produced to Plaintiffs, for the first time, during the course of BCBS's corporate representative deposition on August 5, 2009.[3] (*See* Doc. #42 at 2, ¶ 1; *see also* Doc. #48 at 1-2, 6, ¶ 1).

The Kirklands filed claims with BCBS for several years, and on or about January 4, 2008, BCBS was informed by one of Mr. Kirkland's doctors that he had other coverage through United Healthcare.[4]  (*See* Doc. #42 at 3-4, ¶¶ 5-7).  A disagreement ensued between BCBS and the Kirklands as to which plan was primary, and which was secondary. (*See* Doc. #42 at 5, ¶ 8; *see also* Doc. #48 at 6-7, ¶¶ 4-12). BCBS contended that United Healthcare was primary, and demanded $10,333.20 in refunds from the Kirklands for alleged overpayment of pharmaceutical claims. (*See* Doc. #42 at 5, ¶ 8; *see also* Doc. #48 at 6-7, ¶¶ 5-12).

The Kirklands contacted BCBS on several occasions after receipt of the demand for payment – March 27, 2008, April 4, 2008, and April 18, 2008. (*See* Doc. #42 at 5-6, ¶¶ 9-11; *see also* Doc. #48 at 7, ¶¶ 5-12).  BCBS reviewed the appeal, and

---

[3] BCBS made a complete copy of the National Metals plan available to each insured for review and print via online access at www.bcbsal.org.  BCBS records indicate that Peter Kirkland registered as a member on this website on March 25, 2008.  Katie Kirkland registered as a subscriber on the website on April 17, 2008.  (*See* Doc. #42 at 2, ¶ 2; *see also* Doc. #48 at 6, ¶ 2).

[4] *See* footnote 2, *supra*.

6

notified the Kirklands that its decision that the Kirklands owed BCBS several thousand dollars would stand. (*See* Doc. #42 at 5-6, ¶¶ 9-10). Then, on May 22, 2008, counsel for the Plaintiffs sent a document request and a HIPAA-complaint release to BCBS using the address provided in the Plan, and simultaneously faxed a copy of the same to the BCBS legal department. (*See* Doc. #16 at 2-3, ¶ 1; *see also* Doc. #42 at 6-7, ¶ 12). The request simply asked for "a complete copy of Blue Cross Blue Shield's record regarding the aforementioned client" and did not designate which documents were being requested, which claims were at issue, or any relative time frame. (Doc. #42 at 6, ¶ 12).

BCBS routed the request for records to the subrogation department,[5] and subrogation information was sent to Plaintiff's counsel on July 3, 2008. (*See* Doc. #42 at 7, ¶ 14; *see also* Doc. #16 at 3, ¶ 4). Because subrogation information was not what was being sought by Plaintiffs, counsel for Plaintiffs sent another letter to BCBS on July 14, 2008, requesting BCBS to comply with ERISA's document production requirements. (*See* Doc. #42 at 7, ¶ 14; *see also* Doc. #16 at 3, ¶ 5). On June 23, 2008 Plaintiffs' counsel conferred with BCBS employees, and informed them of their failure to comply with ERISA. (*See* Doc. #16 at 4, ¶ 6). BCBS responded by

---

[5] BCBS claims that the request for records lacked specificity, and "appeared to be typical of attorney drafted letters seeking subrogation information." (Doc. #42 at 7, ¶ 14).

forwarding the request for documents to its legal department. (*See* Doc. #16 at 4, ¶ 6).

On September 24, 2008 Plaintiffs commenced this action by filing a single count complaint in this court alleging violation of the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. §§ 1132(c) and (g) for failure to provide plan documents. (Compl. ¶¶ 41-49). Specifically,

> the Defendant Plan Administrator and/or the *de facto* Plan Administrator was requested to provide all relevant documents as well as any documents which form the basis of the Defendant's decision(s). (Compl. ¶ 42).
>
> . . .
>
> The Defendant Plan Administrator and/or the *de facto* Plan Administrator, failed or refused to provide the documents as required pursuant to 29 U.S.C. § 1132(c) and 29 C.F.R. 2560.503-1 (h)(2) (iii). (Compl. ¶ 45).

On October 20, 2008 defendant BCBS timely filed its answer (doc. #4), generally denying the allegations of the complaint, and specifically denying status as the plan administrator. (*See* Doc. #4 at ¶¶ 9, 29). Plaintiffs' counsel corresponded with counsel for BCBS on October 29, 2008, requesting that BCBS mitigate any further damages by complying with ERISA's document production requirement. (*See* Doc. #16 at 4, ¶ 8; *see also* Doc. #49 at 5, ¶ 8). That same day, BCBS produced documents to the Plaintiffs – a copy of its file related to Mr. Kirkland's coordination

of benefits dispute.  (*See* Doc. #16 at 4, ¶ 9; *see also* Doc. #42 at 10, ¶ 18).

## IV.   ANALYSIS

This is not a "typical" ERISA denial of benefits case.  There is no need for the court to engage in a standard of review analysis as set forth in *Williams  v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004), *Doyle v. Liberty Life Assurance Co. of Boston*, 511 F.3d 1336, 1344 (11th Cir. 2008), *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008), and *White v. Coca-Cola Co.*, 542 F.3d 848, 853-54 (11th Cir. 2008).  Instead this case presents a threshold inquiry – whether BCBS is the plan administrator, or *de facto* plan administrator, of the National Metals Plan.  If BCBS does fit into one of those categories, then it must produce the documents specified by ERISA and be subject to civil penalties for not producing those documents within the time frame established by the statute.  *See* 29 U.S.C. § 1024(b)(4) and 29 U.S.C. § 1132(c)(1).  If BCBS does not fit into one of those categories, then the case is due to be dismissed in its entirety.

### A.   BCBS is not the Plan Administrator named by the Plan.

ERISA mandates that a plan designate an administrator "to run the plan in accordance with the . . . governing plan documents."  *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 891 (11th Cir. 1997); *see also Varity Corp. v. Howe*, 516 U.S. 489 (1996) ("Essentially, to administer the plan is to implement its provisions and carry

out plan duties imposed by [ERISA].") (Thomas, J., dissenting). "Administrator" is

defined as follows:

    (A)    The term "administrator" means –

        (i)    the person specifically so designated by the terms of the instrument under which the plan is operated;

        (ii)    if an administrator is not so designated, the plan sponsor; or

        (iii)    in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

    (B)    The term "plan sponsor" means –

        (i)    the employer in the case of an employee benefit plan established or maintained by a single employer,

        (ii)    the employee organization in the case of plan established or maintained by an employee organization, or

        (iii)    in the case of plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees or other-similar group of representatives of the parties who establish or maintain the plan.

29 U.S.C. § 1002(16).

    Here, the Plan document[6] designates, under "Division of ERISA Duties," that

---

[6] The relevant Plan is that which was in place at the time of Plaintiffs' initial document request on May 22, 2008. That Plan was produced by BCBS to Plaintiff for the first time on

"[t]he Group (and not Blue Cross and Blue Shield of Alabama) is the 'plan administrator' as defined in ERISA and its guidelines." (*See* Doc. #43, attachment to Exh. A at 53). The Group is defined in the Plan document as "[t]he employer, association, or other entity which contracts with Blue Cross and through which you have coverage." (*See* Doc. #43, attachment to Exh. A at 47). As such, it is beyond dispute that "by the terms of the instrument," National Metals is the Plan Administrator for purposes of liability.[7] *See Hunt*, 119 F.3d at 892, n. 3 and 911 (noting that under ERISA, the written instrument is of "seminal importance" and that "straightforward language in an ERISA-regulated insurance policy should be given its natural meaning"); *see also Kobold v. Aetna U.S. Healthcare, Inc.*, 258 F. Supp.2d 1317, 1324 (M.D. Fla. 2003) (Because Aetna was not designated as the plan administrator (and could not be the plan sponsor by virtue of being an insurer) Aetna was not the plan administrator).

## B.    The *De Facto* Plan Administrator Analysis does not Apply to BCBS.

The parties spend a great deal of time arguing factors in favor or against the *de*

---

August 5, 2009. (*See* Doc. #48 at 5, ¶ 8). However, even assuming that the 2002 Plan applies to this action, that Plan states "You must contact your employer to determine whether this plan is covered by COBRA. Blue Cross is not your plan administrator." (*See* Doc. #42 at 15; *see also* Exh. A to Compl. at 12).

[7] Even were the administrator not named by the Plan, BCBS clearly is not the plan sponsor, and in that regard, BCBS is not the plan administrator. *See* 29 U.S.C. §1002(16)(A) and (B).

*facto* plan administrator status of BCBS. (*See* Doc. #42 at 16-26; *see also* Doc. #16 at 8-14).   But neither party cites to cases directly on point.[8]   Such failure is undoubtedly due to the fact that while the Eleventh Circuit has recognized claims for non-production against those who are not technically plan administrators "by the terms of the instrument," *see Hunt*, 119 F.3d at 892, n. 3 and 911, such claims have only been recognized when the *de facto* analysis is applied against an employer, not a third party claims administrator.

Plaintiffs rely heavily on the reasoning set forth by the Eleventh Circuit in *Hamilton v. Allen-Bradley Co., Inc.*, 244 F.3d 819, 824 (11th Cir. 2001).[9]   In that

---

[8] In fact, most of the cases that engage in the *de facto* analysis are "typical" benefit denial cases where the insurer has investigated a claim and relies upon a discrete set of medical records to find the claim is not payable.

[9] *Hamilton* was not the first case in which the Eleventh Circuit recognized *de facto* liability against an employer. In *Rosen v. TRW, Inc.*, a dismissal for failure to state a claim was reversed and the plaintiff was permitted to pursue "the claim that the company was the *de facto* plan administrator and the committee was an inactive entity." 979 F.2d 191, 193-94 (11th Cir.1992). "If a company is administrating the plan, then it can be held liable for ERISA violations, regardless of the provisions of the plan document." *Id.* And in *Garren v. John Hancock Mutual Life Insurance Co.*, 114 F.3d 186 (11th Cir.1997) (per curiam), a participant in an employee benefit plan brought an ERISA action against the insurance company which serviced the plan, alleging wrongful denial. The court held that the insurance company was not the proper party defendant to that action, because it did not control administration of the plan. *Id.* at 187. "In this case, the administrator of the Georgia-Pacific Hourly Employees Welfare Benefits Trust, an ERISA plan, is plaintiff's employer, Georgia-Pacific. In fact, the benefits plan specifically states that 'Georgia-Pacific Corporation is the Plan Administrator ... with exclusive responsibility and complete discretionary authority to control the operation and administration of this Plan ... and to resolve all interpretive, equitable, and other questions that shall arise in the operation of this Plan.'" *Id.*

case, the employee sued her company, arguing that she had been wrongly denied disability benefits under the applicable ERISA plan. *See id.* at 822-23. Under the plan, defendant and employer Allen was not designated as the plan administrator; rather, an insurance company, UNAM, was the named plan administrator. *See id.* The district court granted summary judgment in favor of the employer, Allen, on the ground that it was not the plan administrator. But on appeal the Eleventh Circuit reversed, holding that the "key question" was "whether Allen had sufficient decisional control over the claims process that would qualify it as a plan administrator . . ." *Id.* at 824.

In holding that Allen did have the requisite level of control to qualify as a plan administrator, the Eleventh Circuit relied on several facts. First, the Circuit noted that, although UNAM was the designated plan administrator, "Allen require[d] its employees to go through its human resources department in order to obtain an application for disability benefits." *Id.* Such fact "place[d] Allen in sufficient control over the process to qualify as the plan administrator notwithstanding the language of the plan booklet." *Id.* Moreover, the Circuit observed that Allen held itself out to employees as "administer[ing] the Plan, [ ] process[ing] all claims and appeals, and [ ] provid[ing] other administrative services." *Id.* This bolstered the determination that Allen was a *de facto* plan administrator. Finally, the Circuit noted that "Allen did

carry out its administrative designation by handing out the claim forms itself ... and by fielding questions about the plan from employees." *Id.* Those facts comprised "sufficient indicators that point[ed] to Allen as a plan administrator." *Id.*

Plaintiffs believe that such analysis should govern their claims in this case. (*See* Doc. #16 at 6-10; 12-13). But *Hamilton* and its ancestors are dissimilar from the instant case in a very important way – each applied the *de facto* administrator doctrine to employers, not to third-party administrative services providers. *See Hamilton*, 244 F.3d at 822-23; *see also Garren*, 114 F.3d at 187 and *Rosen,* 979 F.2d at 192-93.

In fact, where plaintiffs in this Circuit have sought to hold a third-party administrative services provider liable, rather than the employer, the Eleventh Circuit has flatly rejected the *de facto* plan administrator doctrine. *See Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288 (11th Cir.1989). In *Baker*, an employer had established an ERISA disability benefits plan, and contracted with Connecticut General Life Insurance to administer claims with an employer-reserved "right to review any and all claim denials." *Id*. at 290. An employee submitted a claim for benefits under the plan, and Connecticut General denied the claim. *Id.* Baker was informed of his right to appeal the initial benefits decision, but instead brought suit in state court claiming that Connecticut General improperly denied his claim. *See id.* The case was removed to federal court, and the district court ruled in favor of

14

Connecticut General, basing its decision in part on the determination that Connecticut General was not an ERISA fiduciary and could not be held liable under ERISA for its handling of Baker's claim. *See id.* The Eleventh Circuit affirmed that decision, holding that "[the employer] did no more than 'rent' the claims processing department of Connecticut General to review claims and determine the amount payable 'in accordance with the terms and conditions of the Plan.'" *Id.* (citing the provisions of the plan). Connecticut General was found to have "not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer," particularly in light of the fact that the employer made the final determination as to eligibility. *Id.* (citations omitted).

The reasoning of *Baker* was upheld by the Eleventh Circuit in *Oliver v. Coca Cola Co.*, 497 F.3d 1181 (11th Cir. 2007), though in a broader context. In that case, Oliver sought benefits under Coca-Cola's long term disability plan, and brought suit after Broadspire and Coca-Cola denied his initial claim and subsequent appeals. *See id.* at 1185-86. The court found that Broadspire was not a proper defendant, as it was not the plan administrator. *See id.* at 1186. In making that determination, the Eleventh Circuit rejected Oliver's argument that *Hamilton* controlled the outcome of

15

the case.[10] *See id.* at 1193. "Indeed, where a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer, we have rejected the *de facto* plan administrator doctrine." *Id.* at 1194.

> Were we to find Broadspire a *de facto* plan administrator on these facts, we would undercut the ability of employers to contract out the administrative tasks associated with operating an ERISA plan, a practice we upheld in *Baker*. Indeed, it is hard to imagine how an administrative services provider could fulfill its functions without engaging in the types of activity that, in *Hamilton*, triggered the application of the *de facto* administrator doctrine . . . The First Circuit, which also recognizes the *de facto* administrator doctrine in some contexts, has also declined to apply the *de facto* administrator doctrine to a third party administrative services provider in circumstances similar to those here . . . Because Broadspire is merely an administrative services provider, and because, under the Plan, Coca-Cola, through the Committee – not Broadspire – makes the final decision on benefits claims, we are bound by *Baker* to hold that Coca-Cola is the plan administrator.

*Oliver v. Coca-Cola Co.*, 497 F.3d 1181 (11th Cir. 2007) (internal citations and quotations omitted), *aff'd on rehearing in relevant part*, 546 F.3d 1353 (11th Cir. 2008).

The *Baker* line of cases, however, does not establish with certainty that the *de facto* analysis fails to apply in the instant case. *Baker* makes clear that the insurance company in that case was not a fiduciary. "An insurance company does not become

_____

[10] As set out above, *Hamilton* held that the plan document is not dispositive with respect to the identity of the plan administrator, and "it is necessary to examine the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." 244 F.3d at 824.

an ERISA fiduciary simply by performing administrative functions and claims processing within a framework of rules established by an employer, especially if ... the claims processor has not been granted the authority to review benefits denials and make the ultimate decisions regarding eligibility." 893 F.2d at 290 (internal citations and quotations omitted).    In the instant case, BCBS most definitely maintains discretion in deciding claims.

But cases from other circuits have extended *Baker*'s reasoning to situations where the third party maintains discretion in deciding claims.

> While Continental apparently exercised some discretion and authority in making benefits determinations, discretion alone is not enough to meet the statutory definition of an ERISA Plan "administrator." *See Krauss v. Oxford Health Plans, Inc.*,[11] 418 F. Supp.2d 416, 434 (S.D. N.Y. 2005) ("An entity may 'administer' some elements of a covered Plan as a fiduciary without being the plan administrator."); *see also* 29 U.S.C. § 1002(21)(A) (defining an ERISA plan "fiduciary" as someone who exercises discretion in, among other things, benefits determinations).   "[I]f a plan specifically designates a plan administrator, then that individual or entity is *the* plan administrator for purposes of ERISA . . ." *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d. Cir. 1998) (emphasis in original); *see also Del Greco v. CVS Corp.*, 354 F. Supp.2d 381, 384 (S.D. N.Y. 2005).
>
> The Court recognizes "that there is some disagreement among courts in this circuit" regarding the proper parties to a recovery of benefits claim

---

[11] "We agree with the district court . . . that since Oxford is not 'the person specifically so designated by the term of the instrument under which the plan is operated,' it is not a plan 'administrator' within the meaning of ERISA." *Krauss v. Oxford Health Plans, Inc., et. al.*, 517 F.3d 614 (2d. Cir. 2008) (internal citations omitted).

under ERISA. *Del Greco*, 354 F. Supp.2d at 384. The court has considered these authorities and finds that the better view, consistent with the language of the statute, is that an insurer to an ERISA plan is generally not a proper defendant in a recovery of benefits claim unless it meets the statutory definition of "administrator" under the Act. *See* 29 U.S.C. § 1002(16)(A); *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d at 509; *Crocco*, 137 F.3d at 107 & n. 2.

*Schnur v. CTC Commc'ns Corp. Group Disability Plan et al.*, 621 F. Supp.2d 96, 107, 109 (S.D. N.Y. 2008); *see also Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of America*, 639 F. Supp.2d 371 (S.D. N.Y. 2009) ("Accordingly, because Guardian was not specifically designated as the administrator, it may not be held liable for inadequate disclosures . . .").

It is interesting to note that ERISA does not define the term "plan administrator" in the same manner as it defines the term "fiduciary;" that is, ERISA does *not* define the term "plan administrator" by reference to the duties and obligations of said person or entity. Rather, a "plan administrator" generally is a specifically identified person or entity.

It seems reasonable to conclude, based on what acts are not necessary to the definition of a "fiduciary," that a plan administrator is one who performs ministerial or nondiscretionary acts in connection with an employee benefits plan.

*Swint v. Protective Life Ins. Co.*, 779 F. Supp. 532, 550, n. 41 (S.D. Ala. 1991).

This court finds that case law from the Eleventh Circuit predetermines the finding that BCBS is not the plan administrator of the National Metals Plan at issue in this case. Not only does the Plan itself specifically designate National Metals as

18

the plan administrator, but BCBS's fiduciary status does not raise it to the level of plan administrator. *See Hunt*, 119 F.3d at 892 ("Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a fiduciary includes not only those who "exercise[ ] any discretionary authority or discretionary control respecting management of such plan or exercise[] any authority or control respecting management or disposition of its assets," but also those who "[have] discretionary authority or discretionary responsibility in the administration of such plan." The Supreme Court has referred to ERISA's definition of fiduciary as "artificial." ) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, n. 5 (1993)); *see also Maxwell v. Blue Cross Blue Shield Healthcare Plan of Georgia*, 2009 WL 734115, No. 1:07-cv-1971-RWS, at *5 (N.D. Ga. March 18, 2009) ("Blue Cross Blue Shield's status as a claims fiduciary does not make it a de facto plan administrator . . . Defendants' decisional control of the claims determinations does not fall outside its role as a fiduciary."). Because BCBS is not the administrator of the National Metals Plan,[12] it has no obligation to produce Plan documents under 29

---

[12] The court has not ignored Plaintiffs' argument that "the 'employer' in question is a closely held corporation in which the Plaintiffs are members. "The essence of BCBS's argument is that the Plaintiffs should have asked themselves to produce documents which the Plaintiffs did not create and do not have." (Doc. #16 at 14). But the familial relationship cannot be determinative of the issue – if it were, courts everywhere would be required to rewrite contracts in cases of family businesses outsourcing to an insurer.

U.S.C. § 1132(c).[13]

## V.   **CONCLUSION**

For the reasons asserted above, Plaintiffs' Motion for Partial Summary Judgment (doc. #15) is due to be denied. Defendant's Motion for Complete Summary Judgment (doc. #41) is due to be granted. A separate order will be entered.

**DONE** this the _20th_ day of November, 2009.

_____

SENIOR UNITED STATES DISTRICT JUDGE

---

[13] Even had this court determined that BCBS was the *de facto* or actual plan administrator, BCBS would nevertheless have prevailed on its motion for summary judgment. Plaintiffs' broad request for documents does not list any of the documents referenced by 29 U.S.C. § 1024(b)(4) – a summary plan description, the latest annual report, any terminal report, any bargaining agreement, any trust agreement, any contract, or any other document under which the plan is operated and established. *See Commissioner v. Acker*, 361 U.S. 87, 91 (1959) (stating that the law is settled that penal statutes are to be construed strictly and that one is 'not to be subjected to a penalty provision unless the words of the statute plainly impose it.'"); *see also Ferree v. Life Ins. Co. of North America*, 2006 WL 2025012, No. 1:05-cv-2266-WSD at *5-6 (N.D. Ga. July 17, 2006) (The Court concludes that "other instruments under which the plan is established or operated" does not include all of the documents that Plaintiff argues may be "relevant" or "pertinent" to a claim. Any obligation to provide Plaintiff copies of documents "relevant" or "pertinent" to his claim must arise, if at all, outside of the statute. To the extent claims-related documents are required to be provided, the obligation arises by federal regulation. *See* 29 C.F.R. § 2560.503-1(g) (2000). This regulation does not provide for strict liability for violation of the regulation and does not impose a per-diem fine . . . In the absence of Eleventh Circuit authority on this issue, the Court declines to rewrite Section 1132(c) to authorize statutory penalties against an administrator for failure to provide documents other than those identified in the statute itself.") and *Disanto v. Wells Fargo & Co.*, 2007 WL 2460732, No. 8:05-cv-1031-T-27MSS at *15 (M.D. Fla. 2007) ("Section 1132(c) does not authorize penalties in connection with any and all types of information requested by the participant; rather, it refers specifically to a plan administrator's failure or refusal to provide the documents identified in Section 1024.") (internal citations and quotations omitted).